Sean H Thomas
Address:  203-240 11 AVE SW, Calgary, AB, T2R 0C3, Canada
Phone: +1 (778) 269-1939
Email: str67@live.com.au

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

Sean H Thomas, plaintiff

      V

Citigroup Global Markets Holdings Inc., defendant

26th of April 2021

## Jurisdiction

1)     This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" and Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a) and Section 27(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa(a) - "Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business". Defendant is an inhabitant of Manhattan encompassed within the Southern District of NY and has made use of the facilities of a national securities exchange (NYSE also in Manhattan) in connection with the transactions, acts, practices, and courses of business alleged in this complaint. Defendant issued and traded daily stock symbols UWT and DWT repeatedly referenced in this complaint. Other securities fraud cases filed by private individual plaintiffs against the **same defendant** in this **same Honorable Court (SDNY)** include: *Merryman et al. v. Citigroup, Inc., et al. (SDNY)*. 1:15-cv-09185-CM-KNF, *In Re: Citigroup Inc. Securities Litigation (SDNY),* 1:07-cv-09901-SHS. Defendant has admitted to "have fallen short of regulators' expectations"[1], those regulators citing "unsafe and unsound banking practices"[1] over "longstanding failure"[1] easily encompassing the **same time period** as the offenses stated in this complaint – from settling a criminal inquiry with federal prosecutors who claimed that in 2017 that defendant was allowing drug smugglers to use the bank to launder money from Mexico[1] to defendant's agreement on March 19,

2020 (this complaint lists March 18 & 19, 2020 as dates of offense) to paying fine to the OCC for violating the fair housing act[2], to a $900 million clerical error on Aug 16,2020.[3]

2)    Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k "provides investors with the ability to hold issuers, officers, underwriters, and others liable for damages caused by untrue statements of fact or material omissions of fact within registration statements at the time they become effective." The UWT stock prospectus states from the very start for UWT "VelocityShares™ 3x Long Crude Oil ETNs linked to the S&P GSCI® Crude Oil Index ER" and for DWT "VelocityShares TM 3x *Inverse* Crude Oil ETNs linked to the S&P GSCI® Crude Oil Index ER" and these same stock descriptions are shown in Exhibit A. Plaintiff details in paragraph 4 below that the quotations above grossly became untrue statements of facts using simple math starting on March 18, 2020 to the closure of the ETF.

## Complaint

3)    Statement of Claim: Plaintiff claims he suffered damages listed below as a result of defendant's blatant fraud in its stock UWT grossly not tracking the index it was advertised to track (i.e., false advertising). Defendant was the issuer of the two now liquidated and defunct stocks UWT and its advertised inverse stock DWT. As shown in the above link to the prospectus for both stocks, UWT was advertised by defendant as "Velocity Shares 3x Long Crude Oil ETNs linked to the S&P GSCI Crude Oil Index ER New" and DWT as the same except with the addition of the word "inverse". Both stocks faithfully tracked the index and mirrored each other as inverse for months and investor stockholders (aka "public at large") such as plaintiff built reliable trust in both stocks performing as advertised. However as detailed in paragraphs 4-8 below, in a two-day period both stocks under tracked the index they were advertised to track by over 50%, and in paragraph 8 that UWT had a massive 50 percentage point shortfall in tracking the index as advertised causing nearly an 80% loss to UWT stockholders including plaintiff because the fraudulent tracking was timed when the price of oil was at a historic low. Paragraph 10 details that the *timing of the fraud coincided exactly TO THE DAY of the NY Governor's order starting the reduction of personnel of non-essential businesses of 50% on March 18 increasing to 100% on March 20, preventing all victims from filing in their home states for all states except NY.  In two days a 50%-80% loss for victims plus being forced to file in the venue of the plaintiff.*

4)   As the two stocks are advertised as the inverse of each other, by definition the % one increased each day would be almost exactly the % the other decreased the same day, which is exactly what happened every day for months. However, Doc.1 shows that from the closing price of 0.6410 on March 17, 2020, UWT dropped to 0.3160 as the closing price two days later on March 19, 2020 – a decrease of 50.7%. In that same two-day period, DWT dropped in price from a closing price of 22.10 on March 17 to 10.15 at closing on March 19 – a drop of 54.1%. **Both stocks dropped over 50% in the same two-day period – clearly blatant acute false advertising by defendant – clearly not following each other as inverse stocks following the stated index or any index.** ***In those two days, defendant stole over half of all investor's money in BOTH stocks.***

5)   Doc.2 shows March 2020 investment account statements (for 3 separate investment accounts) from plaintiff for the stock UWT, shows a total combined UWT loss of **$87,554.17** which is the amount plaintiff is suing for compensatory damages in this complaint. (Account statements Doc. 2 are shown in CAD, compensatory damages were converted to USD on the 25th of April 2021).

6)   The time period of two days was chosen by plaintiff because it most clearly shows the gross fraudulent index under tracking since in that time period both UWT and the advertised inverse DWT dropped over 50%.  To break down the results for each of the two days, referring to the first pic in Doc.1, on March 18, 2020, UWT dropped from .6410 (closing price on March 17) to a closing price on March 18 of .2570 - a 59.9% drop.  In the same time period, DWT increased from 22.10 to 28.01 - only a 26.7% increase - far short of the 59.9% it should have increase to mirror the drop in UWT since DWT was advertised as the inverse stock. On March 19, UWT rose from .2570 (closing price on March 18) to a closing price on March 19 of .3160 - a 23% increase.  In the same time period, DWT dropped from 28.01 to 10.15 - a massive 68.3% drop, far exceeding the 23% increase in UWT.  On both days, the stock which dropped did so far more than its inverse stock rose, causing a net result of an over 50% drop in both stocks over the two-day period. Thus, on the second day the first day's discrepancy was not corrected but further exacerbated greatly.

7)   Though the fact that the stocks advertised as inverse of each other grossly did not mirror each other for March 18 & 19, 2020, plaintiff further provides evidence showing the direct miscorrelation between UWT he bought and the index it was advertised to track. Page 8 of the prospectus states "The Closing

Indicative Value of each series of ETNs on each Index Business Day is based on the closing level of the Index on that Index Business Day."

Doc. 1 shows that on March 19, the "**S&P GSCI Crude Oil Index**" rose 24.38%.  As mentioned in paragraph 4 above, UWT is advertised in its symbol description as "**Velocity Shares 3x Long Crude Oil ETNs linked to the S&P GSCI Crude Oil Index ER New**".  So "**3x**" would mean that UWT should have rose 24.39% times 3 equaling 73.17%.  But as mentioned in the prior paragraph, on March 19 UWT only increased 23% - a massive 50 percentage point shortfall never corrected for.

8) (Prospectus) The prospectus as the link above mentions "supply and demand" effects on pricing in the "secondary market" (NYSE) and that "Any decision to hold the ETNs for more than one day should be made with great care...". Yet nothing in the prospectus allows for such a gross 50% under tracking in ONE DAY being March 19, 2020. The prospectus states that the ETNs aren't meant to be "buy and hold" investments, but doesn't assign a time frame for "hold", and a two-day period (March 18 & 19, 2020 when gross loss by fraud occurred) is hardly much of a "hold" time. Regarding the prospectus stating "the trading price of any series of the ETNs at any time may vary significantly from the Indicative Value of such ETNs at such time because the market value reflects investor supply and demand for the ETNs." First, "vary significantly" would by no means be an investor's definition of a 50% variation (in both UWT and DWT), especially when the stocks mirrored each other nearly perfectly in real time for many months prior to March 18, 2020, most of that time within one percentage point every day.  And if one of the two stocks varied significantly, why didn't the other mirror the significant difference?  The fact is both were 50% lower than they should have been.  The computer program meant to buy and sell in real time to force the stock price up or down grossly did not on March 18 & 19, 2020.  The prospectus states (page 4 of Doc 12-1, listed as page 3 of 85 of prospectus) by the first bullet that Citigroup issued nearly $8 billion in UWT stock.  So lack of funds for buying enough stock to keep the price 50% higher like it should have been to track the advertised index was not an issue, especially with $8 billion available to do so, especially when the bottom of the same page lists an initial offering price of $25/share for both UWT & DWT and price at the time plaintiff made last two sales was 0.29 and .2945 so most of the $8 billion was already profited by defendant in decay over an extended time period of many months and of the measly amount outstanding defendant profited heavily by under tracking fraud causing 50%-80% losses!  Second, the quote mentions "supply and demand" but like "vary significantly" this was never an issue

in the many months previous to March 17 when the defendant's computer algorithm followed the stocks to both faithfully track the index and mirror each other, both within less than one percentage point error on most all days – and then in two days both stocks dropped over 50%!

9) (timing) As stated in paragraph 4 above, "As the two stocks are advertised as the inverse of each other, by definition the % one increased each day would be almost exactly the % the other decreased the same day, which is exactly what happened every day for months." Because the stocks had previously faithfully followed the index correctly in real time for months, obviously defendant used a simple computer program in those months to ensure that if the price of either stock started deviated from the price it should have been to follow the index, the computer would automatically buy or sell enough stock to bring the price to where it should be so that the index was followed correctly. ***Computer programs don't change on their own – a human that had access to the defendant's software must have chosen to change it. Intentional human interference, thus "intentional egregious harm to the plaintiff and public at large (all stockholders)". And this change was made on March 18 & 19, 2020*** as previously stated that the stock UWT flagrantly under tracked the index it was advertised to track and UWT & DWT (grossly) weren't inverse of each other. On March 7, 2020, NY Gov. Cuomo signed Executive Order No. 202 taking action against the Covid-19 emergency and continued throughout March to expand on the order and on ***March 18*** issued Order No. 202.6 to "reduce the in-person workforce at any work locations by 50% no later than March 20 at 8:00 p.m.", followed by Order No 202.7 on ***March 19*** reducing to 75% and Order No. 202.8 on March 20 to 100%. ***Clearly the under tracking was timed to coincide exactly with the closing of defendant's main office in NY to prevent being served summons anywhere except by NY courts via NY Secretary of State who only serves process from summons issued by NY courts.***

10)   Plaintiff also seeks **$787,987.53** in punitive damages (nine times compensatory damages).  Plaintiff recently learned courts in the State of New York don't limit punitive damages and both NY Courts and the US Supreme Court have in most cases limited punitive damages to 10 times compensatory damages, citing US Supreme Court Case *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003) "[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process".  The article referenced in footnote 1 also details that defendant

agreed to pay a fine of $400 million imposed by federal regulators, proving defendant is more than able to pay the total damages sought in this lawsuit which are much less. Addressing the "guideposts" stated in US Supreme Court Case *BMW of North America v. Gore,* 517 U.S. 559 (1996) for assessing whether a particular award exceeds the constitutional limit of due process in the 14th Amendment as "grossly excessive":

i) The degree of reprehensibility of the defendant's misconduct: In this case was extremely severe as stated throughout this complaint in words in italic bold.

ii) Actual or potential harm: The compensatory damages lost by plaintiff were actual damages lost, not merely potential harm – and not just lost by the plaintiff but by many more stockholders as quantified in part (iii) below.

iii) Punitive damages that could be imposed for comparable misconduct:

The prospectus states on page ii at the first "$1,381,750,000 in stated principal amount of 3x Long Crude Oil ETNs (55,270,000 ETNs) outstanding and held by the public and $163,150,000 in stated principal amount of 3x Long Crude Oil ETNs (6,526,000 ETNs) outstanding and held in inventory." Inventory is of course needed in the case "supply and demand" caused the UWT price to fall the price it should have been to accurately track the index as advertised, and clearly defendant had a massive over 6 million shares "held in inventory" with which to do this yet failed to.  On 3/6/20 the share price had dropped from $25 to $4.87 over 3 ¼ years since inception Dec 2016.  The date of 3/6/20 is chosen because it represents a time before the stock price was tarnished by the fraud intensified by the subsequent historic low price of oil. This drop was from long term decay and legitimate and expected.  But the 50% percentage point shortfall for UWT listed in paragraph 8 and further described in paragraphs 6 & 7 to more easily show the fraud in the lack of correlation with the inverse dwt stock was illegitimate – i.e. total fraud.  And as stated at the end of paragraph 4 in bold, this 50% fraud caused loses for plaintiff and all other UWT stockholders as of March 18,2020 a loss of nearly 80% and as high as 94% for those holding for at least the prior 13 days (on or before 3/6/20).  Total shares at the price of $0.6410 (closing price on March 17, 2020 the day before start of the fraud) comes to $195,932,547 held the day prior to the fraud.  A nearly 80% loss from fraud comes to **about $156 million lost by stockholders to the fraud**, even more when those who lost about 94% are added in because for those victims the losses track to when the purchase price was much higher than $0.6410 – as much as $4.87 just 13 days earlier if not more.

11)    In addition to March 18 & 19 2020, the same gross under tracking of the index has been found. Namely, the over 24 percentage point shortfall on March 23 2020, 11 percentage point shortfall on March 24 2020, 9.6 percentage point shortfall on March 31 2020, and to top it off the **75.2 percentage point shortfall on April 2 2020** – 4 additional days of gross under tracking in addition to the 2 days listed (in above paragraphs) in this case for a total of 6 days gross fraud starting March 18 2020, the day that defendant announces the liquidation right up until April 2 capping that final day prior to liquidation with the most extreme fraud! Six grossly fraudulent days starting March 18 2020.

12)    Plaintiff seeks in total:

$87,554.17     - Compensatory Damages

$787,987.53   - Punitive damages (9X compensatory damages)

$402            - NY court filing fee

**$788,389.53**   - Total, plus reasonable interest at a customary rate from March 19, 2020 (the 2nd of the two-day fraud), and any additional relief deemed appropriate by this Honorable Court.

[1] Oct 7, 2020 New York Times online article by Emily Flitter

[2] March 19, 2019 online article by Ben Lane
[3] Nov 16, 2020 The Wall Street Journal online article by Becky Yerak and Alexander Gladstone

Respectfully submitted this 26th day of April, 2021

/s/ Sean H Thomas

Sean H Thomas, plaintiff